## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

THOMAS G. LANDRETH,   )
          )
   Plaintiff-Appellant,  )
          )
   v.        )   No. 2019-2260
          )
THE UNITED STATES,   )
          )
   Defendant-Appellee. )

## DEFENDANT-APPELLEE'S INFORMAL
## RESPONSE BRIEF AND SUPPLEMENTAL APPENDIX

Pursuant to Rule 28(g) of the Rules of the United States Court of Appeals for the Federal Circuit, defendant-appellee, the United States, respectfully submits this response to the informal brief filed by plaintiff-appellant, Thomas G. Landreth.

## STATEMENT OF THE CASE

## I. Nature Of The Case And Jurisdictional Statement

Mr. Landreth challenges a July 24, 2019 decision of the United States Court of Federal Claims in *Landreth v. United States*, No. 18-476L (Fed. Cl.), dismissing his *pro se* complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) for lack of subject-matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a).  SAppx1, SAppx5; *see also Landreth v. United*

*States*, 144 Fed. Cl. 52 (2019).[1]  The Court issued its judgment on July 25, 2019.

SAppx6.  Mr. Landreth timely appealed to this Court on August 8, 2019.  *See*

SAppx11; Fed. R. App. P. 4(a)(1)(B)(i), 26(a)(1)(C).

## II.    Statement Of Facts And Course Of Proceedings Below[2]

Mr. Landreth filed his original complaint with the trial court in March 2018.

*See* ECF No. 1.  While our motion to dismiss that pleading was pending, however,

*see* ECF No. 5, the trial court permitted Mr. Landreth to file an amended complaint

and, consequently, denied our motion as moot.  *See* ECF No. 9 at 2 (order); ECF

No. 7-10 (deemed motion to amend the complaint); ECF No. 12 (amended

complaint).

In his amended complaint, Mr. Landreth generally disputes the Quinault

Indian Nation's alleged assertion of control over the waters of Lake Quinault,

located in the state of Washington.  *See, e.g.*, ECF No. 12 at 2-3.  Mr. Landreth

alleges that he owns real property that abuts the lake.  *See id.* at 5 (¶ 4.1).

Although the amended complaint appears to seek chiefly declaratory and

injunctive relief to remedy various actions taken by the Quinault Indian Nation,

*see, e.g.*, *id.* at 2-3; *id.* at 3 (¶ 2.1); *id.* at 41-42 (¶¶ 15.1-15.12), the amended

complaint also seeks "monetary damages related to [Mr. Landreth's] loss of use of

---

[1]  "SAppx__" refers to the supplemental appendix accompanying this brief.  *See* Fed. Cir. R. 30(d), (f).

[2]  "ECF No. __" refers to the trial court's docket entries.

[his] real property and the trespass by the Quinault Indian Tribe/Nation." *Id.* at 42 (¶ 15.13).

To establish the trial court's jurisdiction, the amended complaint appears to invoke (i) the Indian Tucker Act, 28 U.S.C. § 1505, *see* ECF No. 12 at 3 (¶ 2.1); (ii) the Act of March 3, 1891, ch. 538, 26 Stat. 851 (1891), which temporarily authorized suit in the Court of Claims for the "payment of claims arising from Indian depredations," ECF No. 12 at 3 (¶ 2.2); and (iii) the Tucker Act's contract-based jurisdiction, 28 U.S.C. § 1491(a)(1). *See, e.g.,* ECF No. 12 at 6 (¶¶ 5.1, 5.3); *id.* at 28 (¶ 7.1A); *id.* at 32 (¶ 9.6).

We moved to dismiss the amended complaint pursuant to RCFC 12(b)(1) and 12(b)(6). *See generally* ECF No. 15. We demonstrated that the trial court did not possess subject-matter jurisdiction over any of Mr. Landreth's claims on several grounds, including that:

(1)  the Indian Tucker Act did not apply, *see* ECF No. 15 at 6-7;

(2)  the 1891 Act's grant of jurisdiction had lapsed over a century ago, *see id.* at 7-8;

(3)  Mr. Landreth had failed to allege that he was in privity of contract with the Federal Government, *see id.* at 8-9;

(4)  Mr. Landreth's claims under various treaties, including the Treaty of Olympia, were beyond the trial court's purview, *see id.* at 9-11;

(5)     Mr. Landreth appeared improperly to bring claims against the state of

Washington and the Quinault Indian Nation, *see id.* at 11-12;

(6)     Mr. Landreth appeared improperly to assert various claims sounding

in tort, *see id.* at 12;

(7)     Mr. Landreth appeared improperly to assert claims for constitutional

violations under the Indian Civil Rights Act of 1968, 25 U.S.C.

§ 1302, *see* ECF No. 15 at 12-13;

(8)     Mr. Landreth appeared improperly to assert claims under Washington

state law, *see* ECF No. 15 at 13;

(9)     Mr. Landreth appeared improperly to seek an award of attorney fees

and costs incurred in prior litigation under the Equal Access to Justice

Act, 28 U.S.C. § 2412, *see* ECF No. 15 at 13-14;

(10)    Mr. Landreth appeared improperly to assert some claims that had

accrued more than six years before he filed his original complaint, *see*

ECF No. 15 at 14 (discussing 28 U.S.C. § 2501); and

(11)    Mr. Landreth appeared to assert a Fifth Amendment taking claim

against the Quinault Indian Nation rather than the United States.  *See*

*id.* at 14.

We also demonstrated, in the alternative, that the amended complaint failed on

several grounds to state a claim upon which relief can be granted, *see* ECF No. 15

at 14-16, including that its passing reference to a taking, even liberally construed, did not allege any of the essential elements of a Fifth Amendment taking by the United States. *See id.* at 15-16.

Mr. Landreth opposed our motion, *see* ECF No. 21, and appended dozens of pages of documents to his brief. *See* ECF Nos. 21-1 & 21-2. In addition to repeating much of what had appeared in his amended complaint, Mr. Landreth's opposition brief purported to assert new theories and claims not alleged in that pleading, including, for example, (i) the breach of a fiduciary duty allegedly owed by the Quinault Indian Nation to Mr. Landreth, *see, e.g.*, ECF No. 21 at 3, 8-9, 17, 19-21, 24, 30; and (ii) the Federal Government's vicarious liability for the allegedly illegal conduct of the Quinault Indian Nation. *See, e.g.*, *id.* at 8, 17, 21. We disputed these belated assertions in our reply brief. *See* ECF No. 35.

On July 24, 2019, the trial court dismissed Mr. Landreth's suit pursuant to RCFC 12(b)(1), concluding that it did not possess subject-matter jurisdiction over any of his claims. SAppx1, SAppx5. The court acknowledged the numerous jurisdictional problems affecting Mr. Landreth's suit, but emphasized "[t]he overarching deficiency in [his] complaint"—namely, that "none of [his] claims . . . are alleged against the United States." SAppx4. The trial court also explained that, although the 1891 Act "does not explicitly require an allegation against the United States," that law expressly provided that "no suit or proceeding shall be

5

allowed under this act for any depredation which shall be committed after the passage thereof," SAppx5 (quoting 26 Stat. at 852), and the "depredations" alleged by Mr. Landreth occurred "more than a century" later. *Id.* This appeal followed.

## ARGUMENT

### I. Standard Of Review

Whether the trial court properly dismissed a complaint for lack of subject-matter jurisdiction involves a question of law, which this Court reviews *de novo*. *See Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1310 (Fed. Cir. 2011). In doing so, the Court generally takes "the [undisputed] allegations stated in the complaint . . . as true" and determines the existence of Tucker Act jurisdiction from "the face of the pleadings." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (quotation marks omitted).

### II. Responses To Informal Brief Questions[3]

#### 1. Has The Appellant Ever Had Another Case In This Court? If Yes, State The Name And Number Of Each Case.

Mr. Landreth responded "No" to this question. We have not located any other case in this Court to which Mr. Landreth was or is a party.[4]

---

[3] For ease of reference, we treat Mr. Landreth's two-page Form 12 and its accompanying memorandum and exhibits as though they comprise a single, sequentially-paginated document. Accordingly, our citations to "App. Br. __" correspond to the page number of the docketed PDF, rather than the pagination provided by Mr. Landreth.

[4] However, as Mr. Landreth himself points out, *see* App. Br. at 24, 28, 35-36, he previously filed two unsuccessful lawsuits in both Federal and state court

## 2.     Did The Trial Court Incorrectly Decide Or Fail To Take Into Account Any Facts?  If Yes, What Facts?

Mr. Landreth responded "Yes" to this question, but he appears to contend in his response only that the trial court erred with respect to purely legal questions. *See* App. Br. at 1.  In any event, we disagree.  The trial court properly considered (and liberally construed) all of the allegations in Mr. Landreth's amended complaint.  *See Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

In the memorandum accompanying his Form 12, however, Mr. Landreth appears to contend that the trial court did not consider that the Quinault Indian Nation's "agent" had "totally ignore[d]" Mr. Landreth's e-mails allegedly providing "proof of a depredation" by the Quinault Indian Nation.  App. Br. at 32. That argument is unavailing.

The amended complaint purports to assert a claim pursuant to article VIII of the Treaty of Olympia, which, under certain conditions, gives the United States discretion to compensate the victims of property crimes committed by signatory

---

seeking to remedy the same harms alleged in his amended complaint.  *See generally North Quinault Props. LLC v. State*, No. 76017-3-I, 2017 WL 401397, at *1 (Wash. Ct. App. Jan. 30, 2017) (unpublished) (affirming dismissal of suit), *review denied*, No. 941572 (Wash. S. Ct. May 31, 2017); Order, ECF No. 23, *North Quinault Props. LLC v. Quinault Indian Nation*, No. 3:14-cv-6025 (W.D. Wash. May 4, 2015) (granting motion to dismiss); Order, ECF No. 24, *North Quinault Props. LLC v. Quinault Indian Nation*, No. 3:14-cv-6025 (W.D. Wash. May 4, 2015) (granting motion to dismiss).

"tribes and bands[.]"  12 Stat. 971, 972 (1855).[5]  Before such discretion may be

exercised, however, the crime must "be satisfactorily proven before the agent" of

the tribe or band, and the tribe or band must then further "default" in returning the

property or paying for its loss.  *Id.*

Although it appears that the e-mails to which Mr. Landreth now refers, *see*

App. Br. at 51-57, may have been attached to his original complaint, *see* ECF

No. 1-2 at 85-91, that pleading made no reference to them, *see generally* ECF

No. 1, and he neither attached the e-mails to, nor referenced them in, his amended

complaint.  *See generally* ECF No. 12.  The trial court therefore cannot be faulted

for failing to address the e-mails.  *See* 6 Arthur R. Miller et al., Federal Practice &

Procedure § 1476 (3d ed.) ("Once an amended pleading is interposed, the original

pleading no longer performs any function in the case."); *Fullard v. United States*,

78 Fed. Cl. 294, 299 (2007) ("[A]n overly confusing or incoherent complaint

'makes it difficult for the defendant to file a responsive pleading and makes it

difficult for the trial court to conduct orderly litigation.'" (quoting *Scogin v. United*

*States*, 33 Fed. Cl. 285, 293 (1995))).

Moreover, even if the trial court somehow erred on this score, and even if

Mr. Landreth's e-mails were somehow sufficient to "prove" a depredation by the

Quinault Indian Nation as contemplated by article VIII, the treaty (i) merely

---

[5]  We include the Treaty of Olympia in the addendum to this brief.

*permits*, and does not *require*, the United States to compensate victims of

depredations; (ii) it provides no "clear standards for paying money to [victims]";

and (iii) it does not "specif[y] precise amounts to be paid[.]" *Doe v. United States*,

463 F.3d 1314, 1324 (Fed. Cir. 2006) (internal quotation marks omitted).  The trial

court's alleged error was therefore harmless because Article VIII cannot be

considered a money-mandating source of Federal law that would support Tucker

Act Jurisdiction.  *See id.*; *see also Samish Indian Nation v. United States*, 419 F.3d

1355, 1364-65 (Fed. Cir. 2005).

Finally, Mr. Landreth faults the trial court for how it "interpreted [his]

request for money," App Br. at 41, and includes in his appendix documents that

allegedly prove that his property "lost value" of approximately "$250,000" because

of the actions of the Quinault Indian Nation. *Id.* at 42; *see also id.* at 62-66 (county

property tax assessments).  However, he never claimed below that "$250,000 is a

fair" measure of his damages, *id.* at 42, nor did he provide his valuation documents

in connection with his pleadings.  In any event, because Mr. Landreth has not

adequately pleaded a Fifth Amendment taking, the proper measure of just

compensation for any such taking is irrelevant. *See Otay Mesa Property, L.P. v.*

*United States*, 670 F.3d 1358, 1363-64 (Fed. Cir. 2012) (distinguishing between

the taking itself and the value of just compensation owed for the taking).

### 3. Did The Trial Court Apply The Wrong Law?  If Yes, What Law Should Be Applied?

Mr. Landreth responded "Yes" to this question, and then lists several legal provisions and doctrines without explanation.  App. Br. at 1; *see also id.* (similar responses to question 1).  In his accompanying memorandum, however, Mr. Landreth appears to restate the eight distinct claims asserted in his amended complaint as one claim "under the 'Takings Clause' in the 5th Amendment . . . due to the Express Trust placed upon all signator[ies] to the 1856 Treaty of Olympia." *Id.* at 23; *see also, e.g.*, *id.* at 32 ("[A] 5th Amendment taking of my private property rights and easement . . . is a breach of Express Trust of the binding contract on all parties signatory to the . . . Treaty of Olympia."); *id.* at 34 (similar). This re-articulation notwithstanding, Mr. Landreth has not shown that the trial court erroneously dismissed his suit for want of subject-matter jurisdiction.

### A. No Jurisdiction Over A Fifth Amendment Taking Claim

The Tucker Act grants the Court of Federal Claims limited jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act confers no "substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).  A plaintiff

must therefore "identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). The Court does not possess power to resolve claims that are not founded upon a "money-mandating" source of law. *Testan*, 424 U.S. at 398. Further, *pro se* plaintiffs, like all other plaintiffs, must "prov[e], by a preponderance of the evidence, that the court possesses jurisdiction." *Jordan v. United States*, 128 Fed. Cl. 46, 51 (2016); *see also Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

The Court of Federal Claims undoubtedly has jurisdiction over Fifth Amendment taking claims against the United States. However, Mr. Landreth's amended complaint does not allege a taking *by the United States*. Indeed, his pleading does not even mention the Takings Clause of the Fifth Amendment.

At most, as the trial court correctly determined, *see* SAppx4, the amended complaint alleges a "deprivation of [his] property rights" by the Quinault Indian Nation alone. ECF No. 12 at 29 (¶ 7.4); *see also, e.g.*, *id.* at 31 (¶ 8.4) (referring to "[t]he Tribe's commission of conversion"); *id.* at 35 (¶ 11.3) ("The wrongful actions of the Quinault Indian Tribe . . . deprived Plaintiff . . . [of] the full enjoyment of land, liberty and property[.]"). The amended complaint marshals an array of legal theories to establish liability for that alleged misconduct, none of which depends either expressly or implicitly on the Takings Clause. *See generally*

*id.* at 28-40 (¶¶ 7.1-14.9).  Although the trial court must liberally construe a *pro se* complaint, it has "no duty . . . to create any claims that are not spelled out in [the] pleading."  *Hyde v. United States*, 85 Fed. Cl. 354, 357 (2008) (citing *Scogin*, 33 Fed. Cl. at 293).

Mr. Landreth concedes in his memorandum that "the United States Government did not take away [his] legally obtained Property Rights," but insists that the Federal Government "has allowed the Quinault Indian Tribe/Nation . . . to act indirectly as an authority of the United States and claim ownership of [Lake Quinault]" in a manner "repugnant to the Constitution of the United States." App. Br. at 28; *see also id.* at 34-35.  His amended complaint, however, only vaguely alleges that his "rights . . . have been violated and infringed upon by the . . . United States on behalf of the Quinault Indian Tribe[.]"  ECF No. 12 at 5 (¶ 4.6); *see also id.* (¶ 5) (similar).  These generic and isolated assertions of vicarious liability are insufficient to invoke the trial court's Tucker Act jurisdiction over a taking claim against the United States.  Moreover, to the extent that the amended complaint could be construed to assert a taking claim against the Quinault Indian Nation, it did so under the guise of the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302, *see* ECF No. 12 at 34-36 (¶¶ 11.1-11.7), a law that "is directed not at the federal government, but rather at Indian tribes," and that "does

not impose duties upon the federal government or its officials." *Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006).

Finally, even if the trial court somehow erred in failing to discern a Fifth Amendment taking claim in the amended complaint, over which it could have asserted jurisdiction, the amended complaint still fails to allege any of the essential elements of such a claim, let alone all of them. For instance, it does not allege (and sometimes disclaims):

(1) "affirmative acts by the government" that give rise to the taking, as opposed to "the government'[s] . . . *failure* to act," *St. Bernard Parish Gov't v. United States*, 887 F.3d 1354, 1361-62 (Fed. Cir. 2018) (emphasis added), *cert. denied*, 139 S. Ct. 796 (2019);

(2) "lawful," as opposed to illegal, conduct giving rise to the taking, *Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352 (Fed. Cir. 2001); *accord Schirripa v. United States*, 747 F. App'x 847, 851 (Fed. Cir. 2018) (per curiam); and

(3) a conversion of private property "for *public* use," U.S. Const. amend. V (emphasis added), as opposed to *private* benefit. *See Kelo v. City of New London*, 545 U.S. 469, 477-78 (2005).

And although the "actions of a third party" may sometimes "be attributable to the United States" for purposes of a Fifth Amendment taking claim, the amended complaint here does not plead any "facts plausibly establishing either that [the Quinault Indian Nation] was acting as an agent of the government" when the nation allegedly asserted control over Lake Quinault, "or that [the Quinault Indian Nation's] actions . . . were the product of coercion by the [Federal Government]." *Welty v. United States*, 926 F.3d 1319, 1324 (Fed. Cir. 2019). Indeed, his newly-asserted agency theory—that the Treaty of Olympia "allows the signatory Indians to act indirectly under the authority of the United States," App. Br. at 34—cannot be reconciled with his principal claim that the Quinault Indian Nation allegedly acted in "violation" of that treaty. *See, e.g.*, *id.* at 29, 41, 46-47; *see also Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1385 n.7 (Fed. Cir. 2019) (deciding "for the first time on appeal" whether the plaintiff had "adequately stated a [Fifth Amendment taking] claim").

### B.  No Other Basis For Tucker Act Jurisdiction

We explained both in our motion to dismiss and our reply brief below why the trial court did not possess jurisdiction over the various claims asserted in the amended complaint. *See* ECF No. 15 at 6-14; ECF No. 35 at 2-7. Mr. Landreth now focuses this appeal on his nascent taking theory, and appears largely to abandon his other theories of liability. *See, e.g.*, App. Br. at 26 ("The Court of

Claims is the proper Court for Takings claims which is what all my claims are about."). Nevertheless, his memorandum "repl[ies]" to the trial court's recitation of the various jurisdictional problems also posed by his amended complaint. App. Br. at 26; *see generally id.* at 26-44. We briefly address his responses in turn.

*First*, Mr. Landreth now contends that the United States is liable to him for damages because "Congress has failed as Trustee of the people" to enforce the Treaty of Olympia, App. Br. at 26, or because "the United States is the Trustee/Guardian for the Quinault Indian Tribe with fiduciary and common law responsibility over all the actions taken by the [tribe]" in violation of that treaty. *Id.* at 28-29; *see also id.* at 34, 43. These theories do not appear in his amended complaint and should be deemed waived. *See Driessen v. United States*, 116 Fed. Cl. 33, 44 n.10 (2014). But even if not waived, these new theories are unavailing.

To the extent that Mr. Landreth now claims the existence of a *general* fiduciary duty owed to him by the United States under the Treaty of Olympia, *see, e.g.*, App. Br. at 34-35, 37, 39, 43, his amended complaint does not allege the type of *specific* duty needed to trigger the Tucker Act. *See, e.g.*, *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015) (explaining that the trial court's jurisdiction requires a source of law that does more than "recites a general trust relationship between the United States and the Indian People" (citing *United States v. Mitchell*, 445 U.S. 535-542-44 (1980))); *see also United States v. Navajo*

*Nation*, 537 U.S. 488, 506 (2003) ("[T]he analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions.").[6]

And to the extent that he now suggests that the United States is vicariously liable to him for the Quinault Indian Nation's alleged breach of a fiduciary duty, we note that "[t]he common law doctrine of respondeat superior alone is not a money-mandating 'contract, regulation, statute or constitutional provision' under 28 U.S.C. § 1491." *Stebbins v. United States*, 105 Fed. Cl. 81, 85 (2012) (citing cases). Moreover, "Indian tribes are sovereigns," *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 780 (1991), and that separate sovereignty is fundamentally incompatible with theories of vicarious liability. *See Fiebelkorn v. United States*, 76 Fed. Cl. 438, 440-41 (2007); *Marshall N. Dana Const., Inc. v. United States*, 229 Ct. Cl. 862, 864 (1982); *see also D. R. Smalley & Sons, Inc. v. United States*, 372 F.2d 505, 508 (Ct. Cl. 1967).

*Second*, Mr. Landreth contends that the 1891 Act still supports Tucker Act jurisdiction over his suit. *See* App. Br. at 31; *see also* ECF No. 12 at 3-4 (¶¶ 2.2-2.4). However, as the trial court correctly held, SAppx5, that law provided "[t]hat no suit or proceeding shall be allowed under this act for any depredation which

---

[6] Such fiduciary duty claims are typically asserted under the Indian Tucker Act, 28 U.S.C. § 1505, but Mr. Landreth now disclaims his initial reliance on that jurisdictional statute. *See* App. Br. at 26; *but see, e.g.*, ECF No. 12 at 3 (¶ 2.1).

shall be committed after the passage thereof," 26 Stat. at 852, and the amended complaint hinges on acts that allegedly occurred long after March 3, 1891.[7]

*Third*, Mr. Landreth purports to invoke the Tucker Act's contract-based jurisdiction by characterizing the Treaty of Olympia as a contract. *See* App. Br. at 32-33; *accord* ECF No. 12 at 6 (¶¶ 5.1, 5.3); *id.* at 28 (¶ 7.1A). As a threshold matter, treaties between sovereigns are generally "not within the waiver of sovereign immunity for claims of breach of an 'express contract'" under the Tucker Act. *De Archibold v. United States*, 499 F.3d 1310, 1315 (Fed. Cir. 2007); *but cf. Tsosie v. United States*, 825 F.2d 393, 401 (Fed. Cir. 1987) (holding that "an individual Indian can sue under 28 U.S.C. § 1491 and base the claim . . . on an Indian treaty . . . viewed as a species of contract"). But even if the trial court did possess jurisdiction to consider some "contract" claims under the Treaty of Olympia, the amended complaint does not establish that the treaty put Mr. Landreth himself in privity with the Federal Government. *See Flexfab, L.L.C. v. United States*, 424 F.3d 1254, 1263 (Fed. Cir. 2005) (holding that the "government consents to be sued only by those with whom it has privity of contract"); *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (similar); *see also Huntington Promotional & Supply, LLC v. United States*, 114 Fed. Cl. 760, 766 (2014) ("If a plaintiff fails to comply with RCFC 9(k) and to

---

[7] We include the 1891 Act in the addendum to this brief.

allege sufficient facts to show that it had a contract with the United States, the court cannot exercise jurisdiction over the claim." (citing cases)).[8]

*Fourth*, although the amended complaint appears to assert claims against the Quinault Indian Nation and the state of Washington directly, *see, e.g.*, ECF No. 12 at 38-40 (¶¶ 14.1-14.10); *id.* at 41-43 (¶¶ 15.4-15.6, ¶¶ 15.9-15.12), Mr. Landreth now repudiates his claims against non-Federal entities. *See* App. Br. at 35-37.

*Fifth*, although the amended complaint appears to assert claims sounding in tort, *see, e.g.*, ECF No. 12 at 29-30 (¶¶ 7.5-7.12) (trespass and assault); *id.* at 31 (¶¶ 8.2-8.5) (conversion); *id.* at 32 ¶¶ 9.1-9.7 (tortious interference); *id.* at 33-34 (¶¶ 10.1-10.5) (nuisance), Mr. Landreth now disavows any such claims. *See* App. Br. at 38; *see also* 28 U.S.C. § 1491(a) (precluding jurisdiction over claims "sounding in tort").

---

[8] We do not understand Mr. Landreth to contend, in the alternative, that the trial court possesses Tucker Act jurisdiction over his treaty-based claims to the extent that the Treaty of Olympia may itself be deemed an act of Congress. *Cf. Fields v. United States*, 423 F.2d 380, 383 (Ct. Cl. 1970) (noting, in a dictum, that "the Treaty with the Creek Nation of Indians, June 14, 1866, art. I, 14 Stat. 785" would qualify as an "act[] of Congress" that could support jurisdiction under 28 U.S.C. § 1491). But even if he were making that argument, his claims turn on article VIII of the Treaty of Olympia, which, as we explain above, cannot be considered money-mandating. *See* pp. 8-9. Moreover, to the extent that article VIII requires those who seek compensation for depredations to exhaust their claims "before the agent" before filing suit, the amended complaint does not allege that Mr. Landreth has done so. *Cf. Hebah v. United States*, 428 F.2d 1334, 1340 (Ct. Cl. 1970) (construing similar treaty language to require only presentment of the claim before suit may be filed).

*Sixth*, Mr. Landreth contends that the trial court possesses jurisdiction over his constitutional claims against the Quinault Indian Nation by operation of the Indian Civil Rights Act.  App. Br. at 39-40; *accord* ECF No. 12 at 34-36 (¶¶ 11.1-11.7).  As we explain above, however, the Indian Civil Rights Act is not a money-mandating source of law and cannot support Tucker Act jurisdiction.  *See* pp. 12-13; *see also Hernandez v. United States*, 93 Fed. Cl. 193, 197 n.2 (2010) (explaining that "the Indian Civil Rights Act . . . would not provide jurisdiction" under the Tucker Act); *McCoy v. United States*, Nos. 05-120L & 05-167L, 2005 WL 6124815, at *3 (Fed. Cl. June 29, 2005) ("As for the Indian Civil Rights Act of 1968, this statute concerns the regulation of Indian tribal governments and does not provide a cause of action against the United States.  Further, it lacks any money-mandating provisions." (internal citation omitted)).

*Seventh*, although the amended complaint appears to assert claims under the state of Washington's laws, *see, e.g.*, ECF No. 12 at 26 (¶ 6.70A); *id.* at 33 (¶¶ 10.2-10.3); *id.* at 36-37 (¶¶ 12.1-12.6), Mr. Landreth appears to disavow those claims too.  *See* App. Br. at 40-41.

*Eighth*, Mr. Landreth contends that the trial court "wrongly interpreted [his] request for money as being from the litigation costs in prior lawsuits."  App. Br. at 41.  To the contrary, the trial court acknowledged that the amended complaint seeks both "fees and costs associated with the litigation," i.e., this suit, and an

award of damages "'related to the loss of use of [his] legally obtained real property[.]'" SAppx3 (quoting ECF No. 12 at 42 (¶ 15.13)).[9]

*Finally*, Mr. Landreth contends that his claims arising from the Quinault Indian Nation's actions in 2013 are not time-barred by the six-year limitations period found in 28 U.S.C. § 2501. *See* App. Br. at 42-44. We agree. However, the amended complaint also alleges various wrongful acts taken more than six years before the original complaint was filed in March 2018. *See, e.g.*, ECF No. 12 at 29 (¶¶ 7.5, 7.7); *id.* at 31 (¶ 8.4); *id.* at 35-36 (¶¶ 11.4-11.6). Claims based on those acts are time-barred.

### 4. Did The Trial Court Fail To Consider Important Grounds For Relief?  If Yes, What Grounds?

Mr. Landreth responded "Yes" to this question, and contends that the trial court did not consider that dismissing his suit has left him no other avenues of relief. App. Br. at 1; *see also id.* (response to question 5); *id.* at 37. He also summarily lists the various legal theories and doctrines pervading his amended complaint (which we address above), and makes passing reference to RCFC 19(b) (concerning non-joinder of indispensable parties) and the Federal Tort Claims Act.

---

[9] In his original complaint, Mr. Landreth asked "to be reimbursed for the $200,000.00 loss of a lifetime of savings for supporting [his prior] lawsuits and $200,000.00 for the cost of research materials and information." ECF No. 1 at 3.

*See id.*; *see also id.* (response to question 2, listing RCFC 9).  We disagree that the trial court committed any error.

*First*, even if the Court credited Mr. Landreth's concern that he may have no "remaining court [from which] to seek relief," App. Br. at 1, "[t]he United States, as sovereign, is immune from suit save as it *consents* to be sued," *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (emphasis added), and Mr. Landreth has not shown that the United States has consented to be sued in the Court of Federal Claims for the wrongs alleged in his amended complaint.  *See, e.g.*, *Testan*, 424 U.S. at 403-04.

*Second*, we demonstrated in our motion to dismiss that Mr. Landreth's request for a declaration as to who (among the state of Washington, the Quinault Indian Nation, the Federal Government, and private landowners) rightfully owns the waters of Lake Quinault, *see* ECF 12 at 41-42 (¶¶ 15.1-15.9), raised concerns under RCFC 19(b) because the state of Washington and the Quinault Indian Nation would be indispensable parties who had not waived their respective immunities and joined this litigation as parties.  *See, e.g.*, *Klamath Tribe Claims Comm. v. United States*, 106 Fed. Cl. 87, 96-97 (2012) (dismissing a suit under RCFC 19(b) because the non-party tribes had "a nonfrivolous interest in the subject matter of th[e] suit that might [have] be[en] impaired by an adverse ruling in th[e] case"); *Rosales v. United States*, 89 Fed. Cl. 565, 584-86 (2009) (similar).  The trial court

did not need to address this concern, however, because it ultimately dismissed the entire suit for want of subject-matter jurisdiction.

*Finally*, Mr. Landreth does not mention the Federal Tort Claims Act in his amended complaint, nor is it clear why he references it now—other than to contend that it does not apply to his claims against the Quinault Indian Nation. *See* App. Br. at 39.[10]

### 5.    Are There Other Reasons Why The Trial Court's Decision Was Wrong?  If Yes, What Reasons?

Mr. Landreth responded "Yes" to this question, and repeats his equitable appeal that "[t]he dismissal [of his suit] leaves [him] without recourse for harm caused by a sovereign due to immunity."  App. Br. at 1.  He also renews his complaint that the trial court wrongly interpreted his "money request."  *Id.*  For the reasons stated above, however, the trial court did not err on either score.

Mr. Landreth also contends that, as a *pro se* litigant without "legal representation," he "is at a huge dis advantage[.]"  *Id.*  However, the trial court afforded his amended complaint the same liberal construction to which all self-represented litigants are entitled because of their *pro se* status.  SAppx3.  But, as

---

[10]  And although the amended complaint itself referenced RCFC 9(k), *see* ECF No. 12 at 1, it is not clear how the trial court's dismissal of this suit on jurisdictional grounds ran afoul of that rule, which merely imposes special pleading requirements on plaintiffs who assert breach-of-contract claims.

explained above, that status does not relieve Mr. Landreth of his burden to demonstrate the trial court's jurisdiction. *See* p. 11.

Finally, Mr. Landreth suggests in his memorandum that the trial court may have been "bias[ed]" against him, App. Br. at 47, inasmuch as the court's decision "commend[ed] defendant's work in addressing the myriad arguments presented by [Mr. Landreth]." SAppx4. To be sure, "[i]t is axiomatic that [a] fair trial in a fair tribunal is a basic requirement of due process." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (internal quotation marks omitted). However, the trial court is entitled to "a presumption of honesty and integrity," *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), and it is unclear how a stray remark about the helpfulness of one party's briefs betrays any bias whatsoever, let alone a bias of such gravity as to raise serious doubts about the fairness of the proceedings below.

## 6.    <u>What Action Do You Want The Court To Take In This Case?</u>

Mr. Landreth asks the Court to reverse and remand this case to the trial court to "review the case under the 'Takings Clause' in the 5th Amendment . . . due to the Express Trust placed upon all signator[ies] to the [Treaty of Olympia]." App. Br. at 23; *see also id.* at 44 (similar). We disagree. The Court should affirm the trial court's decision.

**7.    Do You Believe Argument Will Aid The Court?**

Mr. Landreth initially responded "Yes" to this question, but then states that "oral arguments are not needed."  App. Br. at 2 (capitalization omitted).  We agree. The record is clear and resolution on the briefs and supporting materials is justified.

## CONCLUSION

For these reasons, we respectfully request that the Court affirm the trial court's decision.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

/s/ L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

/s/ Isaac B. Rosenberg
ISAAC B. ROSENBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C.  20044
Tel.:     (202) 507-6058
Fax:     (202) 307-0972
E-mail:  Isaac.B.Rosenberg@usdoj.gov

September 16, 2019                    Attorneys for Appellee

# ADDENDUM

# INDEX TO ADDENDUM

**Document**                                                                          **Page**

Treaty Between the United States and the Qui-nai-elt and Quil-leh-ute
Indians (Treaty of Olympia), 12 Stat. 971 (1855) .................................................A-1

Act of March 3, 1891, ch. 538, 26 Stat. 851 (1891) ........................................... A-5

*Treaty between the United States and the Qui-nai-elt and Quil-leh-ute Indians. Concluded on the Qui-nai-elt River, in the Territory of Washington, July 1, 1855, and at the city of Olympia, January 25, 1856. Ratified by the Senate, March 8, 1859. Proclaimed by the President of the United States, April 11, 1859.*

# JAMES BUCHANAN;

## PRESIDENT OF THE UNITED STATES OF AMERICA,

TO ALL AND SINGULAR TO WHOM THESE PRESENTS SHALL COME, GREETING:

July 1, 1855,<br>January 25, 1856.

WHEREAS a treaty was made and concluded on the Qui-nai-elt River, in the Territory of Washington, on the first day of July, one thousand eight hundred and fifty-five, and at the city of Olympia also in said Territory, on the twenty-fifth day of January, one thousand eight hundred and fifty-six, between Isaac I. Stevens, governor and superintendent of Indian affairs in the Territory aforesaid, on the part of the United States, and the hereinafter-named chiefs, headmen, and delegates of the different tribes and bands of the Qui-nai-elt and Quil-leh-ute Indians, on the part of said tribes and bands, and duly authorized thereto by them; which treaty is in the words and figures following, to wit: — *Preamble.*

Articles of agreement and convention made and concluded by and between Isaac I. Stevens, governor and superintendent of Indian affairs, of the Territory of Washington, on the part of the United States, and the undersigned chiefs, headmen, and delegates of the different tribes and bands of the Qui-nai-elt and Quil-leh-ute Indians, on the part of said tribes and bands, and duly authorized thereto by them. *Contracting parties.*

ARTICLE I. The said tribes and bands hereby cede, relinquish, and convey to the United States all their right, title, and interest in and to the lands and country occupied by them, bounded and described as follows: Commencing at a point on the Pacific coast, which is the southwest corner of the lands lately ceded by the Makah tribe of Indians to the United States, and running easterly with and along the southern boundary of the said Makah tribe to the middle of the coast range of mountains; thence southerly with said range of mountains to their intersection with the dividing ridge between the Chehalis and Quiniatl Rivers; thence westerly with said ridge to the Pacific coast; thence northerly along said coast to the place of beginning. *Surrender of lands to the United States.* *Boundaries.*

ARTICLE II. There shall, however, be reserved, for the use and occupation of the tribes and bands aforesaid, a tract or tracts of land sufficient for their wants within the Territory of Washington, to be selected by the President of the United States, and hereafter surveyed or located and set apart for their exclusive use, and no white man shall be permitted to reside thereon without permission of the tribe and of the superintendent of Indian affairs or Indian agent. And the said tribes and bands agree to remove to and settle upon the same within one year after the ratification of this treaty, or sooner if the means are furnished them. In the mean time it shall be lawful for them to reside upon any lands not in the actual claim and occupation of citizens of the United States, and upon any lands claimed or occupied, if with the permission of the owner or claimant. If necessary for the public convenience, roads may be run through said reservation, on compensation being made for any damage sustained thereby. *Reservation within the Territory of Washington.* *Whites not to reside thereon, unless, &c.* *Indians to remove and settle there.* *Roads may be made.*

VOL. XII. TREAT.—125

972  TREATY WITH THE QUI-NAI-ELTS, &c.  July 1, 1855.  Jan. 25, 1856.

**Rights and privileges secured to the Indians.**

ARTICLE III.  The right of taking fish at all usual and accustomed grounds and stations is secured to said Indians in common with all citizens of the Territory, and of erecting temporary houses for the purpose of curing the same; together with the privilege of hunting, gathering roots and berries, and pasturing their horses on all open and unclaimed lands. *Provided, however*, That they shall not take shell-fish from any beds staked or cultivated by citizens; and provided, also, that they shall alter all stallions not intended for breeding, and shall keep up and confine the stallions themselves.

**Payments by the United States.**

·ARTICLE IV.  In consideration of the above cession, the United States agree to pay to the said tribes and bands the sum of twenty-five thousand dollars, in the following manner, that is to say:  For the first year after the ratification hereof, two thousand five hundred dollars; for the next two years, two thousand ,dollars each year; for the next three years, one thousand six hundred dollars each year; for the next four years, one thousand three hundred dollars each year; for the next five years, one, thousand dollars each year; and for the next five years, seven hundred

**How to be applied.**

dollars each year.  All of which sums of money shall be applied to the use and benefit of the said Indians under the directions of the President of the United States, who may from time to time ·determine at his discretion upon what beneficial objects to expend the same; and the superintendent of Indian affairs, or other proper officer, shall each year inform the President of the wishes of said Indians in respect thereto.

**Appropriation for removal, for clearing and fencing land, &c.**

ARTICLE V.  To enable the said Indians to remove to and settle upon such reservation as may be selected for them by the President, and to clear, fence, and break up a sufficient quantity of land for cultivation, the United States further agree to pay the sum of two thousand five hundred dollars, to be laid out and expended under the direction of the President, and in such manner as he shall approve.

**Indians may be removed from the reservation, &c.**

ARTICLE VI.  The President may hereafter, when in his opinion the interests of the Territory shall require, and the welfare of the said Indians be promoted by it, remove them from said reservation or reservations to such other suitable place or places within said Territory as he may deem fit, on remunerating them for their improvements and the expenses of

**Tribes and annuities may be consolidated.**

their removal, or may consolidate them with other friendly tribes or bands, in which latter case the annuities, payable to the consolidated tribes respectively, shall also be consolidated; and he may further, at his discretion, cause the whole or any portion of the lands to be reserved, or of such other land as may be selected in lieu thereof, to be surveyed into lots, and assign the same to such individuals or families as are willing to avail themselves of the privilege, and will locate on the same as a permanent home, on the same terms and subject to the same regulations as are

**Vol. x. p. 1044.**

provided in the sixth article of the treaty with the Omahas, so far as the same may be applicable.  Any substantial improvements heretofore made b, any Indians, and which they shall be compelled to abandon in consequence of this treaty, shall be valued under the direction of the President, and payment made accordingly therefor.

**Annuities of tribes not to pay debts of individuals.**

ARTICLE VII.  The annuities of the aforesaid tribes and bands shall not be taken to pay the debts of individuals.

**The tribes to preserve friendly relations, &c.**

ARTICLE VIII.  The said tribes and bands acknowledge their dependence on the government of the United States, and promise to be friendly with all citizens thereof, and pledge themselves to commit no depredations on the property of such citizens; and should any one or more of them violate this pledge, and the fact be satisfactorily proven before the agent,

**to pay for depredations.**

the property taken shall be returned, or in default thereof, or if injured or destroyed, compensation may be made by the government out of their

**not to make war, except, &c.**

annuities.  Nor will they make war on any other tribe except in self-defence, but will submit all matters of difference between them and other Indians to the government of the United States, or its agent, for decision,

**A-2**

TREATY WITH THE QUI-NAI-ELTS, &c. July 1, 1855. Jan. 25, 1856. 973

and abide thereby; and if any of the said Indians commit any depredations on any other Indians within the Territory, the same rule shall prevail as is prescribed in this article in cases of depredations against citizens. And the said tribes and bands agree not to shelter or conceal offenders against the laws of the United States, but to deliver them to the authorities for trial. **To surrender offenders.**

ARTICLE IX. The above tribes and bands are desirous to exclude from their reservations the use of ardent spirits, and to prevent their people from drinking the same, and therefore it is provided, that any Indian belonging to said tribes, who is guilty of bringing liquor into said reservations, or who drinks liquor, may have his or her proportion of the annuities withheld from him or her, for such time as the President may determine. **Annuities to be withheld from those drinking &c. ardent spirits.**

ARTICLE X. The United States further agree to establish at the general agency for the district of Puget Sound, within one year from the ratification hereof, and to support for a period of twenty years, an agricultural and industrial school, to be free to the children of the said tribes and bands in common with those of the other tribes of said district, and to provide the said school with a suitable instructor or instructors, and also to provide a smithy and carpenter's shop, and furnish them with the necessary tools, and to employ a blacksmith, carpenter, and farmer for the term of twenty years, to instruct the Indians in their respective occupations. And the United States further agree to employ a physician to reside at the said central agency, who shall furnish medicine and advice to their sick, and shall vaccinate them; the expenses of the said school, shops, employees, and medical attendance to be defrayed by the United States, and not deducted from their annuities. **The United States to establish an agricultural &c. school for the Indians. to employ mechanics, &c. a physician, &c.**

ARTICLE XI. The said tribes and bands agree to free all slaves now held by them, and not to purchase or acquire others hereafter. **The tribes are to free all slaves and not acquire others.**

ARTICLE XII. The said tribes and bands finally agree not to trade at Vancouver's Island or elsewhere out of the dominions of the United States, nor shall foreign Indians be permitted to reside on their reservations without consent of the superintendent or agent. **not to trade out of the United States. Foreign Indians not to reside on reservations.**

ARTICLE XIII. This treaty shall be obligatory on the contracting parties as soon as the same shall be ratified by the President and Senate of the United States. **When treaty to take effect.**

In testimony whereof, the said Isaac I. Stevens, governor and superintendent of Indian affairs, and the undersigned chiefs, headmen, and delegates of the aforesaid tribes and bands of Indians, have hereunto set their hands and seals, at Olympia, January 25, 1856, and on the Qui-nai-elt River, July 1, 1855. **Signatures. July 1, 1855. January 25, 1856.**

ISAAC I. STEVENS, *Governor and Sup't of Indian Affairs.*

| | | |
|---|---|---|
| TAH-HO-LAH, *Head Chief Qui-nite-'l tribe,* | his x mark. | L. s. |
| HOW-YAT'L, *Head Chief Quil-ley-yute tribe,* | his x mark. | L. s. |
| KAL-LAPE, *Sub-chief Quil-ley-hutes,* | his x mark. | L. s. |
| TAH-AH-HA-WHT'L, *Sub-chief Quil-ley-hutes,* | his x mark. | L. s. |
| LAY-LE-WHASH-ER, | his x mark. | L. s. |
| E-MAH-LAH-CUP, | his x mark. | L. s. |
| ASH-CHAK-A-WICK, | his x mark. | L. s. |
| AY-A-QUAN, | his x mark. | L. s. |
| YATS-SEE-O-KOP, | his x mark. | L. s. |
| KARTS-SO-PE-AH, | his x mark. | L. s. |
| QUAT-A-DE-TOT'L, | his x mark. | L. s. |
| NOW-AH-ISM, | his x mark. | L. s. |
| CLA-KISH-KA, | his x mark. | L. s. |
| KLER-WAY-SR-HUN, | his x mark. | L. s. |
| QUAR-TER-HEIT'L, | his x mark. | L. s. |
| HAY-NEE-SI-OOS, | his x mark. | L. s. |

| | | |
|---|---|---|
| HOO-E-YAS'LSEE, | his x mark. | [L. S.] |
| QUILT-LE-SE-MAH, | his x mark. | [L. S.] |
| QUA-LATS-KAIM, | his x mark. | [L. S.] |
| YAH-LE-HUM, | his x mark. | [L. S.] |
| JE-TAH-LET-SHIN, | his x mark. | [L. S.] |
| MA-TA-A-HA, | his x mark. | [L. S.] |
| WAH-KEE-NAH, *Sub-chief Qui-nite'l tribe,* | his x mark. | [L. S.] |
| YER-AY-LET'L, *Sub-chief,* | his x mark. | [L. S.] |
| SILLEY-MARK'L, | his x mark. | [L. S.] |
| CHER-LARK-TIN, | his x mark. | [L. S.] |
| HOW-YAT-'L, | his x mark. | [L. S.] |
| KNE-SHE-GUARTSH, *Sub-chief,* | his x mark. | [L. S.] |
| KLAY-SUMETZ, | his x mark. | [L. S.] |
| KAPE, | his x mark. | [L. S.] |
| HAY-ET-LITE-'L, or John, | his x mark. | [L. S.] |

Executed in the presence of us; the words "or tracts," in the II. article, and "next," in the IV. article, being interlined prior to execution.

M. T. SIMMONS, *Special Indian Agent.*
H. A. GOLDSBOROUGH, *Commissary, &c.*
B. F. SHAW, *Interpreter.*
JAMES TILTON, *Surveyor-General Washington Territory.*
F. KENNEDY.
J. Y. MILLER.
H. D. COCK.

**Consent of Senate, March 8, 1859.** And whereas, the said treaty having been submitted to the Senate of the United States for its constitutional action thereon, the Senate did, on the eighth day of March, one thousand eight hundred and fifty-nine, advise and consent to the ratification of the same by a resolution in the words and figures following, to wit: —

"IN EXECUTIVE SESSION,
"SENATE OF THE UNITED STATES, March 8, 1859.

"*Resolved,* (two thirds of the senators present concurring,) That the Senate advise and consent to the ratification of treaty between the United States and the chiefs, headmen, and delegates of the different tribes and bands of the Qui-nai-elt and Quil-leh-ute Indians in Washington Territory, signed 1st day of July, 1855, and 25th day of January, 1856.
"Attest:                         "ASBURY DICKINS, *Secretary.*"

**Proclamation, April 11, 1859.** Now, therefore, be it known that I, JAMES BUCHANAN, President of the United States of America, do, in pursuance of the advice and consent of the Senate, as expressed in their resolution of March the eighth, one thousand eight hundred and fifty-nine, accept, ratify, and confirm the said treaty.

In testimony whereof, I have caused the seal of the United States to be hereto affixed, and have signed the same with my hand.

Done at the city of Washington, this eleventh day of April, in the year of our Lord one thousand eight hundred and fifty-nine, and of the Independence of the United States the eighty-third.

[SEAL.]

JAMES BUCHANAN.

By the President:
LEWIS CASS, *Secretary of State.*

Case: 19-2260    Document: 7    Page: 32    Filed: 09/16/2019

FIFTY-FIRST CONGRESS. Sess. II. Chs. 537, 538. 1891.    **851**

the usual incidental expenses and commissions, shall be covered into the Treasury of the United States and is hereby appropriated and made available for the purpose of constructing the new customhouse building as herein and hereby provided; and in case of such sale the Secretary of the Treasury shall lease said premises from the pur- *Lease of old until completion of new building.* chaser or purchasers thereof, at a rental which shall not exceed four per centum per annum on the purchase price, for use as a custom-house until the new customhouse shall be ready for occupancy, upon such terms as he may deem advantageous, and such sale shall be subject to such right of lease; and the Secretary of the Treasury is hereby authorized to sell said customhouse property and receive the purchase price in several payments from time to time, as he may deem most advantageous: *Provided, however,* That the use, occupa- *Proviso.* tion, and possession of said property shall not be surrendered until *Not to be surrendered until new building ready, etc.* the new customhouse is ready for occupation, and the final payment is fully made.

SEC. 3. That the Secretary of the Treasury be, and he is hereby, au- *Commission to be appointed.* thorized to appoint five citizens of the State of New York who shall be designated as United States building commissioners, and who shall be charged with the erection and construction of the new cus-tomhouse building, as herein provided for. And such commission-ers, or a majority of them, subject to the approval of the Secretary of the Treasury, shall have full power to advertise for proposals for *Proposals for building.* contracts for the erection of said customhouse, or the several parts thereof; and the offers in response to such proposals, if they shall not exceed in the aggregate the amount available under this act for the completion of said customhouse, and if they shall be otherwise satisfactory to said commissioners and to the Secretary of the Treas-ury, shall be accepted, in whole or in part; but in case such offers *May purchase material and build, if bids unsatisfactory.* shall exceed said limits of cost, or be otherwise unsatisfactory, then said commissioners or a majority of them shall have full power and authority to purchase all materials, contract for and employ all necessary labor, including skilled and professional services, with or without advertisement; and said Secretary shall fix a fair and rea- *Compensation.* sonable compensation for the services of such commissioners, to be paid out of any appropriation or appropriations for the construction of said new customhouse.

SEC. 4. That no appropriation is made by this bill in addition to *Limit of amount available.* the sum or sums already appropriated, or available for this purpose under the provisions of an act entitled "An act for the erection of an *Vol. 25, p. 479.* appraisers' warehouse in the city of New York, and for other purposes," approved September fourteenth, eighteen hundred and eighty-eight, and any act, or acts amendatory thereof, together with the sum or sums to be derived from the sale of the present customhouse prop-erty in the city of New York, as herein provided.

SEC. 5. That all acts and parts of acts inconsistent with the pro-visions of this act are hereby repealed.

Approved, March 3, 1891.

---

**CHAP. 538.**—An act to provide for the adjudication and payment of claims aris-ing from Indian depredations.    *March 3, 1891.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That in addition *Indian depredation claims.* to the jurisdiction which now is, or may hereafter be, conferred upon *Court of Claims to adjudicate.* the Court of Claims, said Court shall have and possess jurisdiction and authority to inquire into and finally adjudicate, in the manner provided in this act, all claims of the following classes, namely:

First. All claims for property of citizens of the United States taken *Property taken by friendly Indians.* or destroyed by Indians belonging to any band, tribe, or nation, in

amity with the United States, without just cause or provocation on the part of the owner or agent in charge, and not returned or paid for.

Examined claims.

Vol. 23, p. 376.

Second, Such jurisdiction shall also extend to all cases which have been examined and allowed by the Interior Department and also to such cases as were authorized to be examined under the act of Congress making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes for the year ending June thirtieth, eighteen hundred and eighty-six, and for other purposes, approved March third, eighteen hundred and eighty-five, and under subsequent acts, subject however, to the limitations hereinafter provided.

Offsets and counter claims.

Third. All just offsets and counter claims to any claim of either of the preceding classes which may be before such court for determination.

Limitations waived.

Section 2. That all questions of limitations as to time and manner of presenting claims are hereby waived, and no claim shall be excluded from the jurisdiction of the court because not heretofore presented to the Secretary of the Interior or other officer or department of the Government: *Provided,* That no claim accruing prior to July first, eighteen hundred and sixty-five, shall be considered by the court unless the claim shall be allowed or has been or is pending, prior to the passage of this act, before the Secretary of the Interior or the Congress of the United States, or before any superintendent, agent, sub-agent or commissioner, authorized under any act of Congress to enquire into such claims; but no case shall be considered pending unless evidence has been presented therein: *And provided further,* That all claims existing at the time of the taking effect of this act shall be presented to the court by petition, as hereinafter provided, within three years after the passage hereof, or shall be thereafter forever barred: *And provided further,* That no suit or proceeding shall be allowed under this act for any depredation which shall be committed after the passage thereof.

Provisos.
Claims not to be considered.

To be presented in three years.

Future depredations not included.

Petition, etc.

Section 3. That all claims shall be presented to the court by petition setting forth in ordinary and concise language, without unnecessary repetition, the facts upon which such claims are based, the persons, classes of persons, tribe or tribes, or band of Indians by whom the alleged illegal acts were committed, as near as may be, the property lost or destroyed, and the value thereof, and any other facts connected with the transactions and material to the proper adjudication of the case involved. The petition shall be verified by the affidavit of the claimant, his agent, administrator, or attorney, and shall be filed with the clerk of said court. It shall set forth the full name and residence of the claimant, the damages sought to be recovered, praying the court for a judgment upon the facts and the law.

Service of petition.
Attorney-General to defend.

Section 4. The service of the petition shall be made upon the Attorney-General of the United States in such manner as may be provided by the rules or orders of said court. It shall be the duty of the Attorney-General of the United States to appear and defend the interests of the Government and of the Indians in the suit, and within sixty days after the service of the petition upon him, unless the time shall be extended by order of the court made in the case, to file a plea, answer or demurrer on the part of the Government and the Indians, and to file a notice of any counterclaim, set-off, claim of damages, demand, or defense whatsoever of the Government or of the Indians in the premises: *Provided,* That should the Attorney-General neglect or refuse to file the plea, answer, demurrer, or defense as required, the claimant may proceed with the case under such rules as the court may adopt in the premises; but the claimant shall not have judgment for his claim, or for any part thereof, unless he shall establish the same by proof satisfactory to the court; *Provided,* That any Indian or Indians interested in the proceedings

Provisos.
Proceedings on failure of Attorney-General to defend.

Special attorney for Indians.

Case: 19-2260    Document: 7    Page: 34    Filed: 09/16/2019

FIFTY-FIRST CONGRESS. Sess. II. Ch. 538. 1891.    **853**

may appear and defend, by an attorney employed by such Indian or Indians with the approval of the Commissioner of Indian Affairs, if he or they shall choose so to do.

In considering the merits of claims presented to the court, any testimony, affidavits, reports of special agents or other officers, and such other papers as are now on file in the departments or in the courts, relating to any such claims, shall be considered by the court as competent evidence and such weight given thereto as in its judgment is right and proper: *Provided,* That all unpaid claims which have heretofore been examined, approved, and allowed by the Secretary of the Interior, or under his direction, in pursuance of the act of Congress making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes, for the year ending June thirtieth, eighteen hundred and eighty-six, and for other purposes, approved March third, eighteen hundred and eighty-five, and subsequent Indian appropriation acts, shall have priority of consideration by such court, and judgments for the amounts therein found due shall be rendered, unless either the claimant or the United States shall elect to re-open the case and try the same before the court, in which event the testimony in the case given by the witnesses and the documentary evidence, including reports of Department agents therein, may be read as depositions and proofs: *Provided,* That the party electing to re-open the case shall assume the burden of proof.

SECTION 5. That the said court, shall make rules and regulations for taking testimony in the causes herein provided for, by deposition or otherwise, and such testimony shall be taken in the county where the witness resides, when the same can be conveniently done, and no person shall be excluded as a witness because he is party to or interested in said suit, and any claimant or party in interest may be examined as a witness on the part of the Government; that the court shall determine in each case the value of the property taken or destroyed at the time and place of the loss or destruction, and, if possible, the tribe of Indians or other persons by whom the wrong was committed, and shall render judgment in favor of the claimant or claimants against the United States, and against the tribe of Indians committing the wrong, when such can be identified.

SEC. 6. That the amount of any judgment so rendered against any tribe of Indians shall be charged against the tribe by which, or by members of which, the court shall find that the depredation was committed, and shall be deducted and paid in the following manner: First, from annuities due said tribe from the United States; second, if no annuities are due or available, then from any other funds due said tribe from the United States, arising from the sale of their lands or otherwise; third, if no such funds are due or available, then from any appropriation for the benefit of said tribe, other than appropriations for their current and necessary support, subsistence and education; and, fourth, if no such annuity, fund, or appropriation is due or available, then the amount of the judgment shall be paid from the Treasury of the United States: *Provided,* That any amount so paid from the Treasury of the United States shall remain a charge against such tribe, and shall be deducted from any annuity, fund or appropriation hereinbefore designated which may hereafter become due from the United States to such tribe.

SEC. 7. That all judgments of said court shall be a final determination of the causes decided and of the rights and obligations of the parties thereto, and shall not thereafter be questioned unless a new trial or rehearing shall be granted by said court, or the judgment reversed or modified upon appeal as hereafter provided.

SEC. 8. That immediately after the beginning of each session of Congress the Attorney-General of the United States shall transmit to the Congress of the United States a list of all final judgments

*Evidence.*

*Provisos.*
*Examined claims to have priority.*
*Vol. 23, p. 376.*

*Re-opening cases.*

*Burden of proof.*

*Rules for taking testimony, etc.*

*Judgment to be charged against tribe.*

*Mode of payment.*

*Proviso.*
*Payments from Treasury.*

*Judgments final.*

*Appeal.*

*List of judgments to be sent to Congress.*

854    FIFTY-FIRST CONGRESS. Sess. II. Chs. 538, 539. 1891.

rendered in pursuance of this act, in favor of claimants and against the United States, and not paid as hereinbefore provided, which shall thereupon be appropriated for in the proper appropriation bill.

*Sales, attorneys' contracts, etc., declared void.* SEC. 9. That all sales, transfers, or assignments of any such claims heretofore or hereafter made, except such as have occurred in the due administration of decedents' estates, and all contracts heretofore made for fees and allowances to claimants' attorneys, are hereby declared void, and all warrants issued by the Secretary of the Treas- *Warrants payable to claimant, etc.* ury, in payment of such judgments, shall be made payable and delivered only to the claimant or his lawful heirs, executors or administrators or transferee under administrative proceedings, except *Allowance to attorneys.* so much thereof as shall be allowed the claimant's attorneys by the court for prosecuting said claim, which may be paid direct to such attorneys, and the allowances to the claimant's attorneys shall be regulated and fixed by the court at the time of rendering judgment in each case and entered of record as part of the findings thereof ; but *Maximum.* in no case shall the allowance exceed fifteen per cent of the judgment recovered, except in case of claims of less amount than five hundred dollars, or where unusual services have been rendered. or expenses incurred by the claimant's attorney, in which case not to exceed twenty per cent of such judgment shall be allowed by the court.

*Appeal.* SEC. 10. That the claimant, or the United States, or the tribe of Indians, or other party thereto interested in any proceeding brought under the provisions of this act, shall have the same rights of appeal as are or may be reserved in the Statutes of the United States in other cases, and upon the conditions and limitations therein contained. The mode of procedure in claiming and perfecting an appeal shall conform, in all respects, as near as may be, to the statutes and rules of court governing appeals in other cases.

*All papers, etc., to be furnished the court.* SEC. 11. That all papers, reports, evidence, records and proceedings now on file or of record in any of the departments, or the office of the Secretary of the Senate, or the office of the Clerk of the House of Representatives, or certified copies of the same, relating to any claims authorized to be prosecuted under this act, shall be furnished to the court upon its order, or at the request of the Attorney-General.

SEC. 12. To facilitate the speedy disposition of the cases herein *Additional assistant Attorney-General to be appointed.* provided for, in said Court of Claims, there shall be appointed, in the manner prescribed by law for the appointment of Assistant Attorney-Generals, one additional Assistant Attorney-General of the United States, who shall receive a salary of twenty-five hundred dollars per annum.

SEC. 13. That the investigation and examinations, under the pro- *Investigation under present laws to cease.* visions of the acts of Congress heretofore in force, of Indian depredation claims, shall cease upon the taking effect of this act, and the *Balances to be covered in.* unexpended balance of the appropriation therefor shall be covered into the Treasury, except so much thereof as may be necessary for disposing of the unfinished business pertaining to the claims now under investigation in the Interior Department, pending the transfer of said claims and business to the Court or courts herein provided for, and for making such transfers and a record of the same, and for the proper care and custody of the papers and records relating thereto.

Approved, March 3, 1891.

---

*March 3, 1891.* **CHAP. 539.**—An act to establish a court of private land claims, and to provide for the settlement of private land claims in certain States and Territories.

*Be it enacted by the Senate and House of Representatives of the* *Court of private land claims established.* *United States of America in Congress assembled*, That there shall be, and hereby is, established a court to be called the court of private

**A-8**

# SUPPLEMENTAL APPENDIX

# INDEX TO SUPPLEMENTAL APPENDIX

**Document**                                                                                                    **Page**

Opinion of the United States Court of Federal Claims,
*Landreth v. United States*, No. 18-476L,
      dated July 24, 2019 ............................................................................. SAppx1

Judgment of the United States Court of Federal Claims,
*Landreth v. United States*, No. 18-476L,
      dated July 25, 2019 ............................................................................. SAppx6

Docket of Proceedings before the United States Court of Federal Claims,
*Landreth v. United States*, No. 18-476L ...................................................... SAppx7

# In the United States Court of Federal Claims

No. 18-476L

(Filed: July 24, 2019)

| | | |
|---|---|---|
| THOMAS G. LANDRETH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Motion to Dismiss; Lack of Subject-|
| v. | ) | Matter Jurisdiction; RCFC 12(b)(1). |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Thomas G. Landreth, Hoquiam, WA, pro se.

Isaac B. Rosenberg, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, L. Misha Preheim, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

Before the court is defendant's motion to dismiss plaintiff's amended complaint for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), or in the alternative, to dismiss plaintiff's amended complaint for failure to state a claim, pursuant to RCFC 12(b)(6). See ECF No. 15. In evaluating defendant's motion, the court considered: (1) plaintiff's amended complaint, ECF No. 12; (2) defendant's motion to dismiss, ECF No. 15; (3) plaintiff's response, ECF No. 21; and (4) defendant's reply, ECF No. 35. For the following reasons, defendant's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED**.

I.  Background

Plaintiff is a resident of Washington state "who owns private property abutting Lake Quinault . . . within the boundary of the Olympic National Park." ECF No. 12 at 5.

Case: 19-2260     Document: 7     Page: 39     Filed: 09/16/2019

In his amended complaint, plaintiff summarizes the facts of this case and the relief he seeks, as follows:

> Under State and Federal law Lake Quinault, a navigable waterway abutting the Quinault Indian Reservation and located in Washington State, should be open to the public for its use and recreation as well as to those non-tribal property owners with real property abutting the Lake shore such as the plaintiff. However for more than a decade the Quinault Indian Tribe has increasingly asserted "jurisdiction" and control over this navigable waterway, forcing out the public and non-tribal property owners in derogation of the Equal Footing Doctrine, Public Trust Doctrine, Constitution of the United States, treaties with foreign nations and the 1856 Treaty of Olympia. In April of 2013, the Quinault Indian Tribe has restricted all uses of the lake for non-tribal members. Through this civil action, the Plaintiff[] seek[s] court determination as to the status of Lake Quinault and the property rights of non-tribal property owners abutting the lake, the court determination as to the public's right to access of the lake, its shore and lakebed.

Id. at 2-3.

Under the heading "Jurisdiction" in his amended complaint, plaintiff appears to refer to three bases for the court's jurisdiction: (1) the Tucker Act, 28 U.S.C. § 1491(a) (2012); (2) the Indian Tucker Act, 28 U.S.C. § 1505 (2012); and (3) the Act of March 3, 1891, ch. 538, 26 Stat. 851 (1891). See id. at 3-4. He alleges eight causes of action, in the section titled "Causes of Action against Defendant United States Committed by the Quinault Indian Tribe," (the Tribe) including: (1) deprivation of property rights as a result of various "trespassory" actions taken by the Tribe, id. at 28-30; (2) conversion by the Tribe "committed through its actions in remeandering the lake," and "continually and unlawfully restrict[ing] and prevent[ing] Plaintiff from the use and enjoyment of the Lake," id. at 30-31; (3) tortious interference by the Tribe with plaintiff's property by "denying and restricting lawful access to Lake Quinault," id. at 32-33; (4) private nuisance committed by the Tribe "related to the denial and restriction of the use and enjoyment by Plaintiff of Lake Quinault," id. at 33-34; (5) "violation of the constitution," referencing the Tribe's "wrongful actions" that denied plaintiff "the full enjoyment of land, liberty and property without due process of law," id. 34-36; (6) the Tribe's violation of Washington state law "through its willful and deliberate obstruction and denial of Plaintiff['s] property rights to the Lake," id. at 36-37; (7) "violations of treaties with foreign nations," id. at 37-38; and (8) a request for permanent injunctions against Washington State and the Quinault Indian Tribe to protect plaintiff's enjoyment of Lake Quinault, id. at 38-40.

**SAppx2**

Case: 19-2260   Document: 7   Page: 40   Filed: 09/16/2019

Plaintiff makes numerous requests for declaratory and injunctive relief. See id. at 40-43. The only request for monetary relief, aside from fees and costs associated with the litigation, is plaintiff's request that the court "[a]ward Plaintiff monetary damages related to the loss of use of legally obtained real property and the trespass by the Quinault Indian Tribe/Nation." Id. at 42.

II.   Legal Standards

A.   Pro Se Litigants

The court acknowledges that plaintiff is proceeding pro se, and is "not expected to frame issues with the precision of a common law pleading." Roche v. U.S. Postal Serv., 828 F.2d 1555, 1558 (Fed. Cir. 1987). Pro se plaintiffs are entitled to a liberal construction of their pleadings. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Accordingly, the court has examined the amended complaint and plaintiff's response thoroughly to discern all of plaintiff's claims and legal arguments.

B.   Motion to Dismiss Pursuant to RCFC 12(b)(1)

Pursuant to the Tucker Act, the court has jurisdiction to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). To invoke the court's jurisdiction, plaintiff must show that his claims are based upon the Constitution, a statute, or a regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." United States v. Mitchell, 463 U.S. 206, 216-17 (1983) (quoting United States v. Testan, 424 U.S. 392, 400 (1976)).

The court also possesses jurisdiction:

of any claim against the United States accruing after August 13, 1946, in favor of any tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group.

28 U.S.C. § 1505 (2012).

**SAppx3**

Case: 19-2260   Document: 7   Page: 41   Filed: 09/16/2019

Plaintiff bears the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence.  See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).  To determine whether plaintiff has carried this burden, the court must accept "as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).  If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint.  See RCFC 12(h)(3).

III.   Analysis

In its motion to dismiss, defendant presents a thorough discussion of the various deficiencies in plaintiff's amended complaint with regard to establishing this court's jurisdiction.  See ECF No. 15.  It explains that plaintiff has failed to carry its burden to establish the court's jurisdiction because: (1) the Indian Tucker Act does not apply to this case, id. at 13; (2) the federal statute passed in 1891 to provide "for the adjudication and payment of claims arising from Indian depredations" does not apply to this case, id. at 14; (3) plaintiff has failed to allege a breach of contract claim and thus cannot properly invoke Tucker Act jurisdiction; (4) the court lacks jurisdiction over plaintiff's claims based on treaties; (5) plaintiff's claims are made against the Quinault Indian Nation and the State of Washington, not the United States, id. at 18; (6) the court cannot consider cases sounding in tort, id. at 19; (7) the court cannot consider claims made pursuant to the Indian Civil Rights Act of 1968, id.; (8) the court cannot consider claims based on state law, id. at 20; (9) the court lacks jurisdiction to award fees incurred in prior litigation, id.; (10) the court cannot consider claims that accrued outside the statute of limitation, id. at 21; and (11) although the court has jurisdiction to consider claims for takings committed by the United States, the amended complaint, at most, alleges a taking by the Quinault Indian Nation, id.

The court commends defendant's work in addressing the myriad arguments presented by plaintiff.  A number of defendant's criticisms appear to have merit.  The overarching deficiency in plaintiff's complaint, however, can be stated quite simply— none of the claims made by plaintiff are alleged against the United States.  Absent an allegation that the United States is responsible for some harm suffered by plaintiff, this court lacks jurisdiction to hear his case.  See United States v. Sherwood, 312 U.S. 584, 588 (1941) (holding that the Claims Court's "jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, . . . and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court") (citations omitted).  See also 28 U.S.C. § 1491(a)(1) and 28 U.S.C. § 1505 (both of which give the court jurisdiction over claims made "against the United States").  And to the extent that plaintiff seeks a declaration as to his rights with regard to Lake Quinault, the court likewise is without jurisdiction to consider such relief.  See Testan, 424 U.S. at 398 (stating that the Court of Claims does

4

**SAppx4**

not have the authority to issue declaratory judgments) (citing <u>United States v. King</u>, 395 U.S. 1 (1969)).

The court notes that plaintiff does assert one basis for jurisdiction that does not explicitly require an allegation against the United States—the Act of March 3, 1891, ch. 538, 26 Stat. 851 (1891) (the Act). <u>See</u> ECF No. 12 at 3-4. The Act provided this court's predecessor with jurisdiction over "claims for property of citizens of the United States taken or destroyed by Indians belonging to any band, tribe, or nation, in amity with the United States, without just cause of provocation on the part of the owner or agent in charge, and not returned or paid for." 26 Stat. at 851-52. Even assuming some part of plaintiff's claims would have been covered by the Act, the express terms of the statute stated that "no suit or proceeding shall be allowed under this act for any depredation which shall be committed after the passage thereof." <u>Id.</u> at 852. As such, plaintiff's claims are more than a century too late to invoke this statute as the basis for the court's jurisdiction.

IV.   Conclusion

For the foregoing reasons, the court lacks jurisdiction to consider plaintiff's amended complaint, and defendant's motion to dismiss, ECF No. 15, is **GRANTED**. The clerk's office is directed to **ENTER** final judgment **DISMISSING** plaintiff's amended complaint, without prejudice.

IT IS SO ORDERED.

PATRICIA E. CAMPBELL-SMITH
Judge

5

**SAppx5**

# In the United States Court of Federal Claims

**No. 18-476 L**
**(Filed: July 25, 2019)**

**THOMAS G. LANDRETH**

**Plaintiff**

**v**                                                     **JUDGMENT**

**THE UNITED STATES**

**Defendant**

Pursuant to the court's Opinion, filed July 24, 2019, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff's amended complaint is dismissed without prejudice.

Lisa L. Reyes
Clerk of Court

By: *[signature]*

Deputy Clerk

NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs.   Filing fee is $505.00.

APPEAL,CLOSED,PRO SE

# US Court of Federal Claims
## United States Court of Federal Claims (COFC)
## CIVIL DOCKET FOR CASE #: 1:18-cv-00476-PEC

LANDRETH v. USA
Assigned to: Judge Patricia E. Campbell-Smith
Demand: $200,000
Case in other court: 19-02260
Cause: 28:1491 Tucker Act

Date Filed: 03/29/2018
Date Terminated: 07/25/2019
Jury Demand: None
Nature of Suit: 504 Native American
Jurisdiction: U.S. Government
Defendant

**Plaintiff**

**THOMAS G. LANDRETH**                 represented by   **THOMAS G. LANDRETH**
425 Chenault Avenue
Hoquiam, WA 98550
(360) 533-5578
PRO SE

V.

**Defendant**

**USA**                                 represented by   **Isaac Benjamin Rosenberg**
U.S. Department of Justice - Civil
Division (G)
Post Office Box 480
Ben Franklin Station
Washington, DC 20044
(202) 507-6058
Fax: (202) 307-0972
Email: isaac.b.rosenberg@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/29/2018 | 1 | COMPLAINT against USA (O) (Filing fee $400, Receipt number CFC100003823) (Copy Served Electronically on Department of Justice), filed by THOMAS G. LANDRETH.**Answer due by 5/29/2018.** (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(ew) (Entered: 04/02/2018) |
| 03/29/2018 | 2 | NOTICE of Assignment to Judge Patricia E. Campbell-Smith. (ew) (Entered: 04/02/2018) |
| 03/29/2018 | 3 | NOTICE of Non-ECF Case. (ew) (Entered: 04/02/2018) |

| 04/09/2018 | 4 | NOTICE of Appearance by Isaac Benjamin Rosenberg for USA. Service: 4/9/2018.(hw1) (Entered: 04/09/2018) |
|---|---|---|
| 05/24/2018 | 5 | MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6), filed by USA. Service: 5/24/18. **Response due by 6/25/2018.**(dls) (Entered: 05/24/2018) |
| 07/09/2018 | 6 | ORDER. Plaintiff shall file plaintiff's response to defendant's motion to dismiss **on or before 7/27/2018.** Signed by Judge Patricia E. Campbell-Smith. (hw1) Service on parties made. [Plaintiff by USPS. Tracking number 7017 1450 0000 1346 2267]. (Entered: 07/09/2018) |
| 07/20/2018 | 7 | RESPONSE to 5 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6), MOTION to file an amended complaint, filed by THOMAS G. LANDRETH. **Reply due by 8/3/2018.** Service: 7/20/2018.(hw1) (Additional attachment(s) added on 7/23/2018: # 1 Attachment 1, # 2 Attachment 2, # 3 Attachment 3, # 4 Attachment 4, # 5 Attachment 5, # 6 Attachment 6, # 7 Attachment 7, # 8 Attachment 8) # 9 Attachment 9, # 10 Attachment 10) (hw1). Modified on 7/27/2018 to edit docket text pursuant to order filed 7.27.2018 (vds). (Entered: 07/23/2018) |
| 07/24/2018 | 8 | MOTION for Leave to File to appear as Amicus Curiae, filed by QUINAULT INDIAN NATION. Service: 7/18/2018. **Response due by 8/10/2018.** # 1 Memorandum of Amicus Curiae Quinault Indian Nation, # 2 Exhibit 1, # 3 Declaration of Dr. Larry Gilbertson) (hw1). (Entered: 07/24/2018) |
| 07/27/2018 | 9 | ORDER denying as moot 5 Motion to Dismiss - Rule 12(b)(1) and (6); denying as moot 8 Motion for Leave to Appear as Amicus Curiae. **The Nation shall file any renewed motion for leave to appear as amicus curiae no later than thirty days after the amended complaint is filed; Plaintiff shall file his amended complaint on or before August 24, 2018; Defendant shall file a renewed motion to dismiss or otherwise answer plaintiff's amended complaint no later than thirty days after the amended complaint is filed.** Signed by Judge Elaine D. Kaplan for Judge Patricia E. Campbell-Smith. (vds) Service on parties made. (Entered: 07/27/2018) |
| 10/16/2018 | 10 | MOTION for Leave to File Attached Amended Complaint Out of Time, filed by THOMAS G. LANDRETH. Service: 10/13/18.**Response due by 10/30/2018.** (jt1) (Entered: 10/17/2018) |
| 10/19/2018 | 11 | ORDER granting 10 Motion for Leave to File Out of Time. Signed by Judge Patricia E. Campbell-Smith. (vds) Service on parties made. (Entered: 10/19/2018) |
| 10/19/2018 | 12 | AMENDED COMPLAINT against USA, filed by THOMAS G. LANDRETH. **[Filed by Leave of Judge] Answer due by 11/19/2018.**(vds) (Entered: 10/19/2018) |
| 11/07/2018 | 13 | MOTION for Leave to File Amicus Brief, filed by THOMAS G. LANDRETH, QUINAULT INDIAN NATION. Service: 11/7/2018. **Filed by leave of the court. Response due by 11/21/2018.**(hw1) (Entered: 11/08/2018) |
| 11/07/2018 | 14 | |

**SAppx8**

| | | |
|---|---|---|
| | | ORDER denying 13 Motion for Leave to File Amicus Brief Signed by Judge Patricia E. Campbell-Smith. (hw1) Service on parties made. Copy mailed to Dr. Chenault, 1324 Bel Aire Avenue, Aberdeen, WA 98520. (Entered: 11/08/2018) |
| 11/19/2018 | 15 | MOTION to Dismiss Amended Complaint pursuant to Rules 12 (b)(1) and (6), filed by USA. Service: 11/19/2018. **Response due by 12/17/2018.**(hw1) (Entered: 11/26/2018) |
| 11/28/2018 | 16 | MOTION filed by Mary Eng to Submit Amicus Curaie Brief Support for Plaintiff Thomas G. Landreth. Service: 11/28/2018. **Filed by leave of the court.** (hw1). (Entered: 11/29/2018) |
| 11/28/2018 | 17 | ORDER directing the clerk's office to **FILE** Ms. Eng's motion to file an amicus curiae brief by leave of the court. Ms. Eng's 16 Motion for Leave to File Amicus Brief is **DENIED.** Signed by Judge Patricia E. Campbell-Smith. (hw1) Service on parties made. Copy mailed to Ms. Eng via U.S. Mail. (Entered: 11/29/2018) |
| 12/03/2018 | 18 | MOTION of the **QUINAULT INDIAN NATION** for Leave to Appear as Amicus Curiae. **Filed by leave of the Judge.** . Service: 11/19/2018. **Response due by 12/17/2018.** (Attachments: # 1 Memorandum of Amicus Curiae Quinault Indian Nation, # 2 Exhibit)(hw1) (Entered: 12/03/2018) |
| 12/03/2018 | 19 | RESPONSE to 18 MOTION for Leave to File Amicus Brief, filed by THOMAS G. LANDRETH. **Reply due by 12/13/2018.** (Attachments: # 1 Exhibits) Service: 12/1/2018.(ar) (Entered: 12/04/2018) |
| 12/06/2018 | 20 | RESPONSE to 18 MOTION for Leave to File Amicus Brief, filed by USA.**Reply due by 12/17/2018.** Service: 12/6/18.(jt1) (Entered: 12/07/2018) |
| 12/10/2018 | 21 | RESPONSE to 15 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6), filed by USA. **Reply due by 12/26/2018.** (Attachments: # 1 Table of Content, # 2 Exhibits) Service: 12/10/2018.(hw1) (Entered: 12/11/2018) |
| 12/12/2018 | 22 | MOTION for Extension of Time to File Reply as to 15 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6), filed by USA. Service: 12/12/2018.**Response due by 12/26/2018.**(ac7) (Entered: 12/12/2018) |
| 12/13/2018 | 23 | ORDER granting 22 Motion for Extension of Time to File Reply. re 15 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6). **Reply due by 1/25/2019.** Signed by Judge Patricia E. Campbell-Smith. (ac7) Service on parties made. (Entered: 12/13/2018) |
| 12/14/2018 | 24 | Supplement to 19 Response to Motion re 18 MOTION for Leave to File Amicus Brief, filed by THOMAS G. LANDRETH. **Filed by leave of the Court** Service: 12/14/2018.(ar) Modified on 1/2/2019 - corrected docket text.(jt1). (Entered: 12/18/2018) |
| 12/17/2018 | 25 | Supplement to 19 Response to Motion re 18 MOTION for Leave to File Amicus Brief, filed by THOMAS G. LANDRETH. **Filed by leave of the Court.** Service: 12/15/2018 (Attachments: # 1 Exhibit Q)(ar) Modified on 1/2/2019 - corrected docket text (jt1). (Entered: 12/18/2018) |
| 12/21/2018 | 26 | ORDER directing the clerk's office to correct the docket text for ECF Nos. 24 and 25 and to file them by leave of the court as of the date originally docketed. |

| | | |
|---|---|---|
| | | The clerk's office is further directed to serve the Nation with a copy of this order and each of the supplemental filings. The Nation shall file it's reply brief by 1/18/2019. Signed by Judge Patricia E. Campbell-Smith. (jt1) Service on parties made. (Entered: 01/02/2019) |
| 12/21/2018 | 27 | RESPONSE to 22 MOTION for Extension of Time to File Reply as to 15 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6), filed by THOMAS G. LANDRETH. Filed by leave of the court for the purpose of full disclosure only, otherwise moot. Service: 12/14/18.(jt1) (Entered: 01/03/2019) |
| 01/23/2019 | 28 | MOTION filed by USA, to Stay the deadline to file a reply in support of the motion to dismiss until Congress has restored appropriations to the Department of Justice. Service: 1/23/2019. **Response due by 2/6/2019.**(hw1) (Entered: 01/24/2019) |
| 01/24/2019 | 29 | ORDER: (1) Defendant's 28 motion to stay, ECF No. 28, is **GRANTED;** (2) The clerk's office is directed to **STAY** this matter until further order of the court; and, (3)Immediately upon restoration of appropriations to the Department of Justice, the parties shall **CONFER** and, as soon as practicable thereafter, shall **FILE a joint status report.** The status report shall propose an agreed-upon filing deadline for defendant to file its reply brief in support of the government's motion to dismiss in this matter. Signed by Judge Elaine D. Kaplan for Judge Patricia E. Campbell-Smith. (hw1) Service on parties made. (Entered: 01/24/2019) |
| 01/29/2019 | 30 | REPLY filed by **QUINAULT INDIAN NATION** to the Response to their 18 MOTION for Leave to File an Amicus Brief. **Filed by leave of the judge.** Service: 1/17/2019.(hw1) (Entered: 01/30/2019) |
| 02/01/2019 | 31 | ORDER RETURNING UNFILED: Motion for objection to extend filing time beyond January 25, 2019 received 1/23/2019. Signed by Judge Patricia E. Campbell-Smith. (hw1) Service on parties made. (Entered: 02/01/2019) |
| 02/04/2019 | 32 | STATUS REPORT, filed by THOMAS G. LANDRETH, USA. Service: 2/4/19. (jt1) (Entered: 02/04/2019) |
| 02/07/2019 | 33 | ORDER LIFTING STAY, RETURNING UNFILED: Plaintiff's motion received 2/04/2019, and SCHEDULING Defendant's reply brief in support of its motion to dismiss due by 3/1/2019. The Clerk's Office is directed to return any similar items received by plaintiff to plaintiff, unfiled, until the court has ruled on defendant's motion to dismiss. Signed by Judge Patricia E. Campbell-Smith. (jt1) Service on parties made. (Entered: 02/07/2019) |
| 02/08/2019 | 34 | REPORTED OPINION denying 18 Motion for Leave to File Amicus Brief. Signed by Judge Patricia E. Campbell-Smith. (jt1) Service on parties made. (jt1). Modified on 2/11/2019 - rescanned pdf (jt1). (Entered: 02/08/2019) |
| 02/25/2019 | 35 | REPLY to Response to Motion re 15 MOTION to Dismiss pursuant to Rules 12 (b)(1) and (6), filed by USA. Service: 2/25/2019.(jt1) (Entered: 02/25/2019) |
| 06/25/2019 | | **IMPORTANT NOTICE:** On **Monday, August 26, 2019,** the United States Court of Federal Claims will upgrade its current CM/ECF system to the Next Generation of CM/ECF (NextGen). Complete information regarding the |

|  |  | NextGen implementation can be found on the court's website at http://www.uscfc.uscourts.gov. Currently, many attorneys within a firm may share a single PACER account, but once NextGen is imple mented e-filing attorneys will no longer be able to use shared PACER accounts. To access the upgraded system, each e-filing attorney must have an individual upgraded PACER account. Preparing for NextGen CM/ECF is a two-step process. Step one is to upgrade your PACER account, and step two is to link your upgraded PACER account to your current CM/ECF filing account. This notice only addresses the first step because the second step can't be completed until on or after August 26, 2019. The first step is to check and see if your PACER account is an "Upgraded" PACER account. Many PACER accounts have already been upgraded. If either of the following statements is true, you have an upgraded PACER account and no action is required until on or after August 26, 2019: 1) you currently e-file in another NextGen court or 2) your PACER account was created after August 10, 2014. If neither of these statements is true, you must upgrade your PACER account. Additional notices will be sent at a later date on how to handle the second step in this process. If you still have questions please contact the PACER Service Center at 800-676-6856 or the Clerk's Office CM/ECF Help Desk at (202)357-6402.. (dh) (ADI) (Entered: 06/25/2019) |
| 07/24/2019 | 36 | REPORTED OPINION. The defendant's 15 Motion to Dismiss - Rule 12(b)(1) and (6), is **GRANTED.** The clerk's office is directed to **ENTER** final judgment **DISMISSING** plaintiff's amended complaint, without prejudice. Signed by Judge Patricia E. Campbell-Smith. (hw1) Service on parties made. Plaintiff served via Certified Mail [7018 0040 0001 1393 4878] (Entered: 07/25/2019) |
| 07/25/2019 | 37 | JUDGMENT entered, pursuant to Rule 58, that plaintiff's amended complaint is dismissed without prejudice. (Service on parties made.) (ac7) (Entered: 07/25/2019) |
| 08/08/2019 | 38 | NOTICE OF APPEAL, filed by THOMAS G. LANDRETH. Copy to CAFC. (ac7) (Entered: 08/08/2019) |
| 08/08/2019 |  | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals for the Federal Circuit re 38 Notice of Appeal. (ac7) (Entered: 08/08/2019) |
| 08/12/2019 |  | CAFC Case Number 2019-2260 for 38 Notice of Appeal filed by THOMAS G. LANDRETH. (ac7) (Entered: 08/12/2019) |
| 08/20/2019 |  | CAFC Appeal Fees received $505, receipt number CFC100004857 re 38 Notice of Appeal filed by THOMAS G. LANDRETH. (ac7) (Entered: 08/20/2019) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 09/12/2019 14:55:46 | | |
| **PACER Login:** | isaacrosenberg | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:18-cv-00476-PEC |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

**SAppx11**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this 16th day of September, 2019, I caused a copy of the foregoing "APPELLEE'S INFORMAL RESPONSE BRIEF AND SUPPLEMENTAL APPENDIX" to be filed electronically via the Court's CM/ECF system.

☐ This filing was served electronically on all registered parties by operation of the Court's electronic filing system.

_____

■ I also caused a copy of this filing to be served via

    ☐ hand delivery

    ■ mail

    ☐ third-party commercial carrier for delivery within 3 days

    ☐ electronic means, with the written consent of the party being served upon the following addresses:

      Thomas G. Landreth
      425 Chenault Avenue
      Hoquiam, WA  98550


      /s/ Isaac B. Rosenberg